UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WILLIAM WYNN, JR., <br> *Plaintiff*, | ) <br> ) <br> ) | 3:21-CV-925 (SVN) |
| v. | ) <br> ) | |
| NEW HAVEN BOARD OF <br> EDUCATION, DR. ILINE TRACEY, <br> *Defendants*. | ) <br> ) <br> ) | April 8, 2022 |

**RULING AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiff William Wynn, Jr., has brought this nine-count amended complaint against Defendants, the New Haven Board of Education ("the Board") and its superintendent, Dr. Iline Tracey, arising from their decisions not to promote him and to ultimately terminate him. Counts One through Four allege race discrimination and retaliation in violation of federal law, 42 U.S.C. § 2000e *et seq.*, and Connecticut law, Conn Gen. Stat. § 46a-60, against the Board. Counts Eight and Nine allege disability discrimination in violation of federal law, 42 U.S.C. § 12101 *et seq.*, and Connecticut law, § 46a-60, against the Board. Of particular relevance to this motion, Counts Five through Seven allege Connecticut common law torts. Specifically, Count Five alleges defamation/slander against Dr. Tracey, Count Six alleges defamation *per se* against Dr. Tracey, and Count Seven alleges intentional infliction of emotional distress against both Defendants.

Defendants seek to dismiss Counts Five through Seven, asserting that Wynn fails to state each claim, and thus dismiss Dr. Tracey from this action. Wynn disagrees, maintaining that he has plausibly alleged defamation and intentional infliction of emotional distress.

For the reasons described below, the Court agrees with Defendants. Counts Five, Six, and Seven of the second amended complaint are DISMISSED without prejudice to seek leave to refile, subject to the good cause standard of Fed. R. Civ. P. 16(b).

## I.     FACTUAL BACKGROUND

The following facts from the second amended complaint are accepted as true for the purposes of this motion.[1] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Wynn is an African-American man who has been employed by the Board for seventeen years. Sec. Am. Compl. at 1, 3 ¶ 1. He "has consistently maintained satisfactory or above performance evaluations and has never received any written warnings or other disciplinary actions." *Id.* ¶ 1.

At the start of the 2019-2020 school year, the Board experienced "transportation challenges" with respect to busing its students. *Id.* ¶ 2. Then-superintendent Dr. Carol Birks "requested an all-hands-on-deck response, and [Wynn] was among the many hands involved" in overcoming these challenges, which resolved within a few weeks. *Id.* ¶ 3. As a result of Wynn's performance with respect to these challenges, Dr. Birks personally notified him "that she had submitted and recommended that [Wynn] be promoted into the Transportation Director position," which had remained open for "almost 600 days." *Id.* ¶ 4.

---

[1] Defendants initially filed their motion to dismiss Wynn's first amended complaint, which asserted Counts One through Seven arising from Defendants' refusal to promote Wynn to the position of transportation director allegedly due to his race. ECF Nos. 8, 19. The Court granted Wynn's motion for leave to file the second amended complaint while Defendants' motion to dismiss was still pending. *See* ECF No. 40. Except as discussed below, the counts of defamation, defamation *per se*, and intentional infliction of emotional distress raised in Wynn's second amended complaint substantially repeat the same counts raised in his first amended complaint. Accordingly, as requested by Defendants, the Court will consider the motion to dismiss as applied to Counts Five through Seven of the second amended complaint. *See* ECF No. 42, Defs.' Notice re Mot. to Dismiss. *See also Roller Bearing Co. of Am., Inc. v. Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008) ("When a plaintiff amends its complaint while a motion to dismiss is pending, which happens frequently, the "court then has a variety of ways in which it may deal with the pending motion [to dismiss], from denying the motion as moot to considering the merits of the motion in light of the amended complaint." (citations and internal quotation marks omitted)).

Later in the fall of 2019, the Board removed Dr. Birks from her position and appointed Dr. Tracey as interim superintendent. *Id*. ¶¶ 5–6. Wynn alleges that at that point, his "promotional opportunity" was "rescinded," and "Dr. Tracey opened the position to external applicants." *Id*. ¶ 7.

Wynn raises various aspects of the hiring process that he claims adversely affected his application for the position. For example, the Board's human resources personnel who had worked with Wynn in the past "were not included or present during [Wynn's] interview for the position," which was "an uncommon" practice. *Id*. ¶ 10. When Wynn submitted a letter requesting an investigation into what he believed were discriminatory hiring practices, the Board disregarded his request, despite one Board member's support of the request. *Id*. ¶¶ 12–14. In addition, when the Caucasian applicant who was hired for the position resigned after only two weeks, the Board did not reconsider Wynn for the position despite the fact that he had been one of four final applicants during the initial hiring process. *Id*. ¶ 16.

Of particular relevance to this motion, Wynn alleges that, during the hiring process, Dr. Tracey "had begun executing adverse, derogatory, and unpleasant feelings or opinions against [Wynn], including advising other staff members that Wynn was 'lazy' and 'incapable' of performing the position." *Id*. ¶ 11. Dr. Tracey allegedly "reiterated her defamatory and slanderous negativity against [Wynn]," particularly when she "advised a local newspaper journalist . . . that she had heard [Wynn] was 'lazy.'" *Id*. ¶ 17.

In March of 2020, Wynn filed a complaint for discrimination and retaliation on the basis of race with the Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities. *Id*. at 2. After those commissions released jurisdiction and permitted Wynn to pursue his claims in court, Wynn filed a complaint against the Board. ECF

No. 1. He subsequently amended the complaint to add the Connecticut common law torts and to add Dr. Tracey as a Defendant. ECF No. 8 (first amended complaint).

Around February of 2021, while Wynn's administrative proceedings related to his failure to attain the transportation director position were pending, he applied for a short-term disability leave of absence arising from a recent heart attack. Sec. Am. Compl. ¶¶ 21, 23. During the summer of 2021, Wynn requested to extend his leave of absence, and the Board's Human Resources personnel did not effectively communicate with him regarding the status of his request. *Id*. ¶¶ 28–39. In July of 2021, Wynn was informed that his initial request for short term disability leave of absence, dated from February, had been denied, despite having previously been approved. *Id*. ¶ 35. Wynn was subsequently informed that he had exhausted his accrued vacation time and thus had been terminated. *Id*. ¶ 46. Wynn filed a complaint for disability discrimination with the Equal Employment Opportunity Commission and the Connecticut Commission on Human Rights and Opportunities. When those commissions released jurisdiction, Wynn received leave from the Court to amend his complaint again to allege those facts and add Counts Eight and Nine for disability discrimination in violation of federal and state law against the Board.

Defendants move to dismiss Counts Five, Six, and Seven of the second amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF No. 19; *see also supra* footnote 1. With respect to Wynn's claims of defamation and defamation *per se*, Dr. Tracey asserts that Wynn fails to allege the purported defamatory statements with sufficient specificity, and that they constitute non-actionable statements of opinion. With respect to Wynn's claim of intentional infliction of emotional distress, Dr. Tracey and the Board assert that Wynn fails to allege conduct that is "extreme and outrageous" as required by Connecticut law. As these are the only counts

asserted against Dr. Tracey, she seeks to be dismissed from the action entirely. The Court heard oral argument on the motion.

## II.     LEGAL STANDARD: FED. R. CIV. P. 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The facial plausibility standard requires more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement." *Id*. (citation and internal quotation marks omitted). However, it "is not akin to a probability requirement," nor does it require "detailed factual allegations[.]" *Id*. (citation and internal quotation marks omitted). The Court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in favor of the plaintiff." *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).

## III.    COUNTS FIVE AND SIX: DEFAMATION AND DEFAMATION *PER SE*

### A. Legal Standard

"To succeed on a defamation claim in Connecticut, a plaintiff must show that: (1) defendant made a false statement about plaintiff; (2) defendant published the statement to a third party; and (3) plaintiff's reputation was thereby injured." *Cweklinsky v. Mobil Chemical Co.*, 364 F.3d 68, 73 (2d Cir. 2004) (citing *Torosyan v. Boehringer Ingelheim Pharms., Inc.*, 234 Conn. 1, 27 (1995)). In addition, an actionable defamatory statement "must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner,*

*Inc.*, 334 Conn. 396, 410 (2020) (citations and internal quotation marks omitted) (quoting *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 795 (1999)).  On the distinction between an actionable statement of fact and a non-actionable statement of opinion, the Connecticut Supreme Court has instructed: "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known. . . . An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact."  *Goodrich v. Waterbury Republican-Am., Inc.*, 188 Conn. 107, 111 (1982) (citations omitted).

The court recognized, however, that the distinction between fact and opinion can be "somewhat nebulous[.]" *Id.* at 112 (citation and internal quotation marks omitted).  "[A]lthough an opinion may appear to be in the form of a factual statement, it remains an opinion if it is clear from the *context* that the maker is not intending to assert another objective fact but only his personal comment on the facts which he has stated. . . . Thus, . . . [t]he important point is whether ordinary persons hearing or reading the matter complained of would be likely to understand it as an expression of the speaker's or writer's opinion, or as a statement of existing fact." *Id.* at 111–112 (emphasis in original) (citations and internal quotation marks omitted).  In considering whether an ordinary person would likely understand a statement as an expression of opinion or a statement of fact, courts tend to consider "three basic, overlapping" factors: "(1) whether the circumstances in which the statement is made should cause the audience to expect an evaluative or objective meaning; (2) whether the nature and tenor of the actual language used by the declarant suggests a statement of evaluative opinion or objective fact; and (3) whether the statement is subject to objective verification." *NetScout Sys., Inc.*, 334 Conn. at 414.

A claim of defamation *per se* requires a plaintiff to allege a statement whose "defamatory meaning . . . is apparent of the face of [it]," and accordingly the statement "is actionable without proof of actual damages." *Battista v. United Illuminating Co.*, 10 Conn. App. 486, 491–92 (1987) (citation omitted). "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation." *Id*. at 492 (citation and internal quotation marks omitted). Whether a statement constitutes defamation *per se* "is a question for the court." *Id*. (citation and internal quotation marks omitted). Connecticut has generally recognized two categories of statements which are actionable as defamatory *per se*: (1) statements charging a plaintiff of a crime, and (2) statements that injure a plaintiff in their profession. *Proto v. Bridgeport Herald Corp.*, 136 Conn. 557, 565–66 (1950); *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850 (2005).

B. Discussion

The Court concludes that Dr. Tracey's statements that Wynn was "lazy" and "incapable of performing the position" constitute non-actionable opinion.[2] As an initial matter, Wynn characterizes these statements as reflecting her derogatory and unpleasant "*feelings*" and "*opinions*" about him. *See* Sec. Am. Compl. ¶ 11 (emphasis added). At least one court in this district has concluded that allegedly defamatory statements constituted non-actionable "personal

---

[2] Dr. Tracey also contends that Wynn's allegations are too vague to plausibly state a claim of defamation or defamation *per se*. Mem. in Supp. of Mot. to Dismiss at 9–11. For support, Dr. Tracey references several Connecticut state trial court cases that have required plaintiffs to plead allegedly defamatory statements with specificity. *See, e.g.*, *Ortiz v. Weinzieri*, No. DBDCV195015078S, 2019 WL 4860672, at *2 (Conn. Super. Ct. Sept. 10, 2019) ("Vague statements or references cannot support a defamation case. . . . If the allegations are not clear as to the identity of the speaker, audience and the type of statements made, it is difficult for the defendant to plead any special defenses."); *Forgione v. Bette*, No. CV044001099S, 2005 WL 1545278, at *3–4 (Conn. Super. Ct. June 2, 2005) ("[A] claim of libel must be pled with specificity, as the precise meaning and choice of words employed is a crucial factor in any evaluation of falsity. . . . Certainty is required in the allegations as to the defamation and as to the person defamed; a complaint for defamation must, on its face, specifically identify what allegedly defamatory statements were made, by whom, and to whom." (citations and internal quotation marks omitted)). However, the question of vagueness has not been directly addressed by the Connecticut Appellate Court or Supreme Court. *See id.* at *4. Because the Court concludes that Dr. Tracey's remarks reflect non-actionable opinion, it need not address whether Wynn has failed to plead his claims of defamation and defamation *per se* with the requisite specificity.

7

comments about conduct, qualifications or character" where the plaintiff himself characterized the defendant's statements about him as "subjective opinions[.]" *Farzan v. Bridgewater Assocs.*, No. 3:16-cv-935 (SRU), 2017 WL 354685, at *10 (D. Conn. Jan. 24, 2017). By Wynn's own admission, Dr. Tracey's words reflected her personal opinion, not objective fact.

More importantly, the three factors considered by Connecticut courts to differentiate actionable statements of fact from non-actionable statements of opinion weigh in Dr. Tracey's favor. *See NetScout Sys., Inc.*, 334 Conn. at 414. First, the circumstances of the statements, as alleged by Wynn, cannot support a reasonable inference that the audience would "expect an . . . objective meaning." *See id*. Notably, Dr. Tracey had been recently appointed as interim superintendent when she began making the purportedly defamatory statements. Wynn alleges that Dr. Tracey assumed her position in October of 2019, and that she made these statements sometime between then and January of 2020. Sec. Am. Compl. ¶¶ 11–12. Wynn argues that Dr. Tracey's brief tenure at the time of the alleged statements supports an inference that the statements reflected actionable fact because Dr. Tracey "had no basis upon which to state a mere opinion, not having had an opportunity or basis upon which to form a mere opinion." Mem. in Opp. to Mot. to Dismiss at 6.

But Dr. Tracey's short tenure in her position before making the statements about Wynn strongly suggests that the statements reflected her opinion *precisely because* she had little opportunity or basis to ascertain any facts underlying his work performance. In other words, an ordinary person hearing Dr. Tracey's statements about Wynn and knowing that she recently ascended to her position "would be likely to understand it as an expression of [Dr. Tracey's] opinion" because she could not be expected to know the full "state of affairs that existed in the past [and] present" concerning Wynn's employment history with the Board. *See Goodrich*, 188

8

Conn. at 111–12. Moreover, there is no allegation that Dr. Tracey had any direct experience supervising or working with Wynn, such that she would have had the opportunity to learn firsthand any objective facts about his performance. Indeed, Wynn's allegation about what Dr. Tracey allegedly said to a newspaper journalist is that Dr. Tracey "had heard" Wynn was lazy. Sec. Am. Compl. ¶ 17. This allegation does not evince an objective fact, but rather a subjective evaluation of Wynn based on what Dr. Tracey allegedly had heard from another person. Wynn's argument is the type of unreasonable inference that the Court is not required to draw in Wynn's favor, particularly because such an inference is "belied by more specific allegations of the complaint," such as Dr. Tracey's tenure with the Board, and by allegations missing from the complaint, such as any direct interaction between Dr. Tracey and Wynn. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *BLT Restaurant Grp. LC v. Tourondel*, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012) (noting that a court is "not required to draw unreasonable inferences or to credit legal conclusions at odds with [the] plaintiff's own factual allegations." (citation and internal quotation marks omitted)). *See also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) ("Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint . . . and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."). Accordingly, the context of Dr. Tracey's statements cannot plausibly support an inference that the alleged statements are factual and therefore actionable.

The second factor, which considers the actual language of the statements, also strongly weighs in Dr. Tracey's favor because the nature of the statements indicates that they reflected "evaluative opinion[.]" *See NetScout Sys., Inc.*, 334 Conn. at 414. Specifically, Dr. Tracey's comments constituted "personal *comment[s]* about [Wynn's] conduct, qualifications or character" pertaining to his work performance. *See Goodrich*, 188 Conn. at 111. Courts applying

9

Connecticut defamation law have characterized comments about an employee's work performance as non-actionable opinion. For example, a court in this district concluded that "the defendant's statements concerning the plaintiff's work performance," particularly the defendant's negative assessment of the plaintiff's "professional competence," were "not actionable as defamation because they were merely expressions of opinion." *Grossman v. Computer Curriculum Corp.*, 131 F. Supp. 2d 299, 313 (D. Conn. 2000). In so concluding, the court noted that "statements concerning work performance are merely expressions of opinion and, therefore, are not actionable as defamation." *Id.* at 312. *See also Iosa v. Gentiva Health Servs., Inc.*, 299 F. Supp. 2d 29, 38 (D. Conn. 2004) (holding that the defendant's statement identifying "serious concerns" with the plaintiff's work performance reflected "an opinion by [the defendant] about the adequacy of [the plaintiff's] work"). Consistent with these cases, the Court notes that Dr. Tracey's alleged statements related generally to Wynn's job performance, which tends to establish that the statements reflected non-actionable opinion.

The final factor, considering whether the statement is capable of objective verification, likewise weighs in Dr. Tracey's favor. As with the second factor, courts applying Connecticut defamation law have held that evaluative statements pertaining to the quality or adequacy of an employee's work performance are not capable of objective verification. *See Perruccio v. Arseneault*, 7 Conn. App. 389, 393–94 (1986) (holding that an allegation that the plaintiff exhibited "dictator leadership" was "properly characterized as opinion because it is not objectively capable of being proven true or false"); *Johnson v. Schmitz*, 119 F. Supp. 2d 90, 101–02 (D. Conn. 2000) (holding that criticisms of the plaintiff's academic competence "were made during an academic evaluation of [the] plaintiff's work" to doctoral program faculty, and thus were most likely understood as an expression of opinion, analogous to an evaluative statement regarding an

10

employee's performance). The Court finds those cases persuasive here. Dr. Tracey's alleged statements that Wynn was "lazy" and "incapable of performing the position" reflect no more than her subjective evaluation of his work performance, which is not capable of objective verification. Wynn maintains that his work performance "can be objectively verified by reference to, for example, [his] seventeen year history of employment with the [Board], and his past performance in . . . the recent transportation crises[.]" Mem. in Opp. to Mot. to Dismiss at 3. However, the possibility that another individual in Dr. Tracey's position might disagree with her subjective evaluation of his work performance does not render that evaluation less subjective in nature.

Wynn also disagrees by referencing *NetScout Systems*, in which the Connecticut Supreme Court reasoned that "the expression of an opinion may, under certain circumstances, reasonably be understood to imply the existence of an underlying basis in an unstated fact or set of facts," and thus may be actionable. *NetScout Sys., Inc.*, 334 Conn. at 411–12. Wynn maintains that the context of Dr. Tracey's comments—particularly her staunch opposition to his application for the transportation director position, allegedly motivated by discriminatory animus—support a reasonable inference that an unstated set of facts bolstered her statements.

Wynn's reliance on *NetScout Systems*, however, is misplaced. That case considered whether a product rating system, which allegedly implied the inferior quality of the plaintiff's products, constituted actionable defamation. *Id*. at 419. To the extent this factual context is comparable to Wynn's employment performance, *NetScout Systems* further favors Dr. Tracey. In concluding that the product ratings were not actionable, the court rejected the plaintiff's argument that the product ratings "impliedly conveyed a factual assertion that the [plaintiff's products] lacked" certain qualities exhibited by the competitor products. *Id.* at 419–20. Instead, the court reasoned that, like "most ratings of goods and services," the product ratings reflected "an

11

expression of evaluative opinion rather than verifiable fact." *Id.* at 420; *see also id.* at 422 (concluding that statements about the plaintiff's product "were based in part on the subjective evaluations of the plaintiff's customers"). Similarly, the Court rejects Wynn's contention that Dr. Tracey's statements "impliedly conveyed a factual assertion" that Wynn's performance was objectively deficient. *See id.* at 419. Rather, the Court concludes that, like most assessments of an employee's "professional competence" and "work performance," Dr. Tracey's statements "are not actionable as defamation because they were merely expressions of opinion." *See Grossman*, 131 F. Supp. 2d at 313.

Because Wynn has failed to allege defamatory statements of fact, the Court dismisses his claim of defamation contained in Count Five of the second amended complaint. In addition, Wynn raises no separate basis on which his claim of defamation *per se* can survive Dr. Tracey's motion to dismiss. It is clear that Dr. Tracey's statements did not accuse Plaintiff of committing a crime and, for the reasons discussed above, her statements are non-actionable opinions about Plaintiff's work performance. Accordingly, the Court dismisses Wynn's claim of defamation *per se* contained in count six of the second amended complaint. However, the Court notes that these dismissals are without prejudice to request leave to amend the complaint, subject to the good cause standard of Fed. R. Civ. P. 16(b).

**IV. COUNT SEVEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

A. Legal Standard

A plaintiff claiming intentional infliction of emotional distress ("IIED") must establish four elements: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4)

that the emotional distress sustained by the plaintiff was severe." *Appleton v. Board of Educ.*, 254 Conn. 205, 210 (2000) (internal citations and quotation marks omitted). "Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress." *Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998).

At oral argument, Defendants conceded that Wynn has plausibly alleged the first, third, and fourth elements set forth above, but they contend he has failed to plead facts that plausibly allege the conduct was extreme and outrageous. "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury." *Appleton*, 254 Conn. at 210 (citation omitted). Regarding the outrageousness of defendant's conduct, the Connecticut Supreme Court has explained:

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society . . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 210–11 (citations and internal quotation marks omitted) (quoting W. Prosser & W. Keeton, Torts (5th Ed.1984) § 12, p. 60, and 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). Connecticut courts generally hold that "insults, verbal taunts, threats, indignities, annoyances, petty oppressions or conduct that displays bad manners or results in hurt feelings do not support a claim for intentional infliction of emotional distress," particularly in an employment context. *Miner v. Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citations omitted).

B. Discussion

Wynn raises three categories of alleged conduct by Defendants that he claims were extreme and outrageous: first, the Board's decision not to hire him for the transportation director position due to his race; second, the Board's ultimate decision to terminate him due to his disability; and third, Dr. Tracey's remarks about his work performance. However, none of these allegations rise to the level of extreme and outrageous conduct required by Connecticut law.

First, with respect to the Board's decision not to hire him for the transportation director position, courts have frequently found that an employer's "adverse yet routine employment action," such as refusing to promote an employee, "does not constitute extreme and outrageous behavior when the employer does not conduct that action in an egregious and oppressive manner." *Miner*, 126 F. Supp. at 195. Indeed, the seminal case in Connecticut regarding this tort involved an employment situation that did not rise to the level of being extreme and outrageous. The plaintiff in *Appleton*, a teacher, alleged that that the school principal "made condescending comments to [the plaintiff] in front of [her] fellow colleagues questioning [her] vision and ability to read," subjected her to "psychiatric evaluations," forced her to resign, and called police to escort her from the school. *Appleton*, 254 Conn. at 211. The Connecticut Supreme Court recognized that this conduct "may very well have been distressing and hurtful to the plaintiff." *Id.* The court concluded, however, that such conduct did not "constitute extreme and outrageous conduct within the meaning of the precedents" defining this standard because the conduct was "not so atrocious as to exceed all bounds usually tolerated by decent society." *Id*. at 211–12. One court reached a similar conclusion regarding allegations that a plaintiff employee was demoted. *Melendez v. New Haven*, No. 3:13-CV-860 (RNC), 2013 WL 6859941, at *4 (D. Conn. Dec. 30, 2013) (holding that

allegations that the plaintiff was demoted, among others, were "insufficiently extreme and outrageous to survive the motion to dismiss").

At oral argument, Wynn urged the Court to examine Defendants' decision not to hire him for the transportation director position in the context of their discriminatory and retaliatory practices alleged with respect to Counts One through Four of the second amended complaint. In other words, Wynn contends that Defendants' conduct was extreme and outrageous because it was motivated by discrimination and retaliation on the basis of his race. However, Connecticut courts have emphasized that, "[i]n the employment context, it is the employer's conduct, not the motive behind the conduct, that must be extreme or outrageous." *Miner*, 126 F. Supp. 2d at 195. "[A]llegations of a wrongful refusal to hire based on racial discrimination, without more, are insufficient to support an intentional infliction of emotional distress claim." *Huff*, 10 F. Supp. 2d at 123; *see also Robinson v. New Haven*, 578 F. Supp. 2d 385, 391 (D. Conn. 2008) ("The allegations in the complaint state a claim for a routine employment action based on racial discrimination. Such allegations are insufficient as a matter of law to state a claim for intentional infliction of emotional distress.").

In other words, "[a]lthough employment discrimination is illegal, it does not *per se* give rise to a claim for intentional infliction of emotional distress." *Allen v. Egan*, 303 F. Supp. 2d 71, 78 (D. Conn. 2004). Accordingly, even accepting as true that Defendants decided not to promote Wynn for discriminatory motives, such conduct is not extreme and outrageous under Connecticut law.

The same reasoning applies to the Board's ultimate decision to terminate Wynn. Again, the plaintiff in *Appleton* "was forced to take a suspension and a leave of absence and, ultimately, forced to resign," yet the Connecticut Supreme Court declined to find such conduct extreme and

outrageous. *Appleton*, 254 Conn. at 211. Moreover, the Board's decision to terminate Wynn, even if due to his disability, would not state a claim for intentional infliction of emotional distress alone. As explained with respect to the Board's decision not to promote Wynn due to his race, "[t]he employer's motive" for firing or not hiring an employee "is not relevant to whether the act was outrageous; it is the act itself which must be outrageous." *Huff*, 10 F. Supp. 2d at 123. For example, one court in this district held that a plaintiff employee's allegations that the defendant employer terminated her in retaliation due to her disability failed to state a claim for intentional infliction of emotional distress because such motive, "even if true, is not enough" to satisfy the "rigorous standard" for extreme and outrageous conduct. *Groth v. Grove Hill Med. Ctr., P.C.*, No. 3:14-CV-1563 (RNC), 2015 WL 4393020, at *6–7 (D. Conn. July 15, 2015). Likewise, the Board's decision to terminate Wynn, even if improperly motivated by his disability, does not constitute extreme or outrageous conduct under Connecticut law.

Finally, turning to Dr. Tracey's comments that Wynn was "lazy" and "incapable" of performing the job, the Court concludes that such allegations, at most, "rise to the level of insults and taunts that have not been found to be enough to establish, as a matter of law, a claim of intentional infliction of emotional distress." *Hopkins v. New England Health Care Employees Welfare Fund*, 985 F. Supp. 2d 240, 261 (D. Conn. 2013). *See also Miner*, 126 F. Supp. 2d at 195 (noting that "insults" and "verbal taunts" do not rise to the level of extreme and outrageous conduct); *Tracy v. New Milford Pub. Schs.*, 101 Conn. App. 560, 567–68 (concluding that allegations that the defendant employer "harassed, intimidated and defamed [the plaintiff] in the workplace" were not extreme and outrageous), *cert. denied*, 284 Conn. 910 (2007).

Wynn contends that Dr. Tracey calling him "lazy" was extreme and outrageous because this term has historically been applied with particular insidiousness to African-Americans. Though

Wynn acknowledges that this term is not "a classic racial slur," he contends that Dr. Tracey's comment had a force and effect similar to a racial slur.  For support, Wynn references two cases in which Connecticut trial courts held that a defendant employer's repeated use of offensive racial slurs against a plaintiff employee was extreme and outrageous in light of Connecticut's "strong public policy . . . prohibiting discrimination on the basis of race, sex or national origin." *Leone v. New England Comms.*, No. CV010509752S, 2002 WL 1008470, at *3 (Conn. Super. Ct. Apr. 10, 2001) (quoting *Curtis v. Loether*, 415 U.S. 189, 196 n.10 (1974) ("An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of emotional distress.")); *Savage v. Andoh*, No. CV075015657, 2008 WL 1914630, at *3–4 (Conn. Super. Ct. Apr. 11, 2008).  For their part, Defendants dispute Wynn's proposition that the term "lazy" is akin to a racial slur, noting that Wynn cites no authority for this proposition.

       The Court need not resolve the parties' dispute on the question of whether the term "lazy" is racially charged as applied to African-Americans.  The second amended complaint references one discrete occasion when Dr. Tracey allegedly referred to Wynn as "lazy," as well as one occasion on which Dr. Tracey reported to a journalist that "she *had heard*" that Wynn was "lazy." Sec. Am. Compl. ¶¶ 11, 17 (emphasis added).  These facts are readily distinguishable from the two cases cited by Wynn, which involved disturbing patterns of conduct in which the defendant employers repeatedly invoked highly offensive slurs.  Other Connecticut trial courts have found those cases inapposite to claims in which a racial slur was invoked during "a single event which was not of extended duration."  *See Brown v. Mulcahy*, No. CV065001276S, 2007 WL 2363303, at *3–4 (Conn. Super. Ct. July 24, 2007) (distinguishing *Leone* and concluding that the defendant's use of a racial slur, while "reprehensible," did not rise to the level of extreme and outrageous conduct); *Burr v. Howell*, No. CV020464225S, 2003 WL 21675848, at *4 (Conn. Super. Ct. June

17

25, 2003) (distinguishing *Leone* because the alleged single use of a racial slur was "isolated in the context of a heated breakdown of a business relationship between the parties," rather than a "pattern of racially motivated conduct").

Even were the Court to assume an offensive racial connotation to the term "lazy," Wynn references only one instance when Dr. Tracey directly referred to him as such. Accordingly, the Court cannot conclude that Wynn's allegations demonstrate actionable extreme and outrageous conduct. As with respect to his claims of defamation and defamation *per se*, the Court's dismissal of Wynn's claim of intentional infliction of emotional distress is without prejudice to seek leave to amend the complaint yet again, subject to the good cause standard of Fed. R. Civ. P. 16(b).

## V.     CONCLUSION

Because Wynn fails to allege actionable statements of fact, Counts Five and Six of the second amended complaint, alleging defamation and defamation *per se* respectively against Dr. Tracey, are dismissed. Because Wynn fails to allege extreme and outrageous conduct under Connecticut law, Count Seven of the second amended complaint, alleging intentional infliction of emotional distress against both Defendants, is also dismissed. Thus, Defendants' motion to dismiss is GRANTED, and Dr. Tracey is dismissed as a defendant from this action.

The Court also sets the following deadlines for the case. Pursuant to the Court's Scheduling Order, ECF No. 17, discovery is set to conclude by June 30, 2022. **Any motion by Plaintiff seeking to amend the complaint to re-allege a claim of defamation, defamation *per se*, or intentional infliction of emotional distress in accordance with this Order shall be due by April 30, 2022.** In addition, as noted during oral argument on this motion, the Court will not require a prefiling conference before the parties file dispositive motions. Accordingly, dispositive

18

motions will be due **August 1, 2022.** Opposition and reply briefs shall be filed according to the deadlines set forth in Local Rule 7.

**SO ORDERED** at Hartford, Connecticut, this 8th day of April, 2022.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE